IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAX L. ARY,

           Plaintiff,

        vs.                          Case No. 05-1201-JTM

THE CINCINNATI INSURANCE
COMPANY,

           Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on the defendant's Motion for Summary Judgment (Dkt. No. 44). Defendant requests oral arguments, but the court does not find this to be necessary. After reviewing the parties' arguments, the court finds in favor of defendant.

## I. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the

nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance.  Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in Matsushita).  The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## II. FINDINGS OF FACT

### A. The Indictment and Trial

An Indictment was filed against Max Ary on April 6, 2005 as Criminal Action Number 05-10053-01-JTM in the United States District Court for the District of Kansas.  A Superseding Indictment was filed against Ary on May 3, 2005, and the case was tried before a jury.

Counts 1 and 2 of the Superseding Indictment charge that Ary violated 18 U.S.C. § 1343 and 18 U.S.C. § 1341 through his handling of an Omega mock-up watch and insurance proceeds deposited into the Cosmosphere's account for the loss of the mock-up watch, and through his subsequent certification that the watch was in the Cosmosphere's possession, undertaken for the purpose of executing a scheme and artifice to defraud and for obtaining money by false and fraudulent pretenses and representations.  The jury trying the criminal action entered a verdict finding Ary guilty of the charges made against him in Counts 1 and 2 of the Superseding

2

Indictment.  The same jury entered a Special Verdict finding that $396 constituted or was derived from the proceeds Ary obtained directly or indirectly as the result of the violations charged in Counts 1 and 2 of the Superseding Indictment.

Count 3 of the Superseding Indictment charges that on or about April 6, 2000, and continuing through May 6, 2000, Ary embezzled, stole, purloined and knowingly converted to his use and the use of another, and without authority sold, conveyed and disposed of an Apollo 15 DDR tape that was the property of the National Aeronautic and Space Administration, in violation of 18 U.S.C. § 641.  The jury found Ary guilty of the charges made against him in Count 3 of the Superseding Indictment.

Count 4 of the Superseding Indictment charges that on or about June 19, 2000, and continuing through June 28, 2000, Ary, having devised a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, and in order to effect the scheme and artifice, knowingly and willfully caused a check to be delivered through the U.S. Mail conveying the proceeds of the sale of the property that Ary embezzled, stole, purloined and knowingly converted to his use, the proceeds of which he was not entitled to receive, in violation of 18 U.S.C. § 1341.  The jury found Ary guilty of the charges made against him in Count 4 of the Superseding Indictment.  The jury entered a Special Verdict finding that $1,980 constituted or was derived from the proceeds Ary obtained directly or indirectly as the result of the violations charged in Counts 3 and 4 of the Superseding Indictment.

Count 8 of the Superseding Indictment charges that on or about October 10, 2000, Ary, having devised a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, and in order to effect the scheme and artifice, did

3

knowingly and willfully cause another to use the United States Postal Service to mail an Owner Master Listing from the Fall 2000 Space Memorabilia Auction to Ary in violation of 18 U.S.C § 1341.  The jury entered a verdict finding Ary guilty of the charges made against him in Count 8 of the Superseding Indictment.

Count 10 of the Superseding Indictment charges that on or about August 11, 2000, and continuing through October 29, 2000, Ary unlawfully transported, transmitted, transferred and caused to be transported, transmitted and transferred in interstate commerce from Kansas to California, goods, wares and merchandise, that is, items owned by the Cosmosphere, of the value of $5,000 and more, knowing the same to have been stolen, converted and taken by fraud in violation of 18 U.S.C. § 2314. Paragraph 72 of Count 10 of the Superseding Indictment charges that Ary was not authorized by the Cosmosphere to convert for his own benefit Cosmosphere property.  The jury entered a verdict finding Ary guilty of the charges made against him in Count 10 of the Superseding Indictment.  The same jury entered a Special Verdict finding that $13,150 constituted or was derived from the proceeds Ary obtained directly or indirectly as the result of the violations charged in Counts 8 and 10 of the Superseding Indictment.

Count 11 of the Superseding Indictment charges that on or about January 6, 2001, Ary knowingly engaged and attempted to engage in a monetary transaction by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the deposit of two checks, in the amount of $49,635 into Ary's account at Central Bank and Trust in Hutchinson, Kansas, such property having been derived from a specified unlawful activity, that is mail fraud in violation of Title 18, United States Code, Section 1341, and interstate transportation of stolen property in violation of Title 18, United

4

States Code, Section 2314, all in violation of 18 U.S.C. § 1957. The jury entered a verdict finding Ary guilty of the charges made against him in Count 11 of the Superseding Indictment. The same jury entered a Special Verdict finding that $36,485.00 was involved in or traceable to property that was involved in the money laundering violation set out in Count 11 of the Superseding Indictment.

Count 12 of the Superseding Indictment charges that on or about February 28, 2001, and continuing through May 6, 2001, Ary embezzled, stole, purloined and knowingly converted to his use and the use of another, and without authority sold, conveyed and disposed of a signal conditioner that was the property of the National Aeronautic and Space Administration in violation of 18 U.S.C. § 641. The jury entered a verdict finding Ary guilty of the charges made against him in Count 12 of the Superseding Indictment.

Count 13 of the Superseding Indictment charges that on or about February 28, 2001, Ary, for the purpose of executing a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, knowingly devised and intended to devise a plan which caused to be transmitted in interstate commerce by means of wire communications certain writings, signs, signals and sounds which transmitted from the defendant in Kansas to Superior Galleries in California a cover document and a master listing with descriptions of the items Ary offered for sale in violation of 18 U.S.C. § 1343. The jury entered a verdict finding Ary guilty of the charges made against him in Count 13 of the Superseding Indictment.

Count 15 of the Superseding Indictment charges that on or about February 28, 2001, and continuing through May 6, 2001, Ary unlawfully transported, transmitted, transferred and caused to be transported, transmitted and transferred in interstate commerce from Kansas to California,

5

goods, wares and merchandise, that is, items owned by NASA and the Cosmosphere, of the value of $5,000 and more, knowing the same to have been stolen, converted and taken by fraud in violation of 18 U.S.C. § 2314.  The jury entered a verdict finding Ary guilty of the charges made against him in Count 15 of the Superseding Indictment.  The jury entered a Special Verdict finding that $37,625 constituted or was derived from the proceeds Ary obtained directly or indirectly as the result of the violations charged in Counts 12, 13 and 15 of the Superseding Indictment.

Count 16 of the Superseding Indictment charges that, in violation of 18 U.S.C. § 957, on or about July 2, 2001, Ary knowingly engaged and attempted to engage in a monetary transaction by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of a check, in the amount of $34,504 into Ary's bank account at First National Bank of Hutchinson in Hutchinson, Kansas, such property having been derived from a specified unlawful activity, that is, theft of government property in violation of Title 18, United States Code, Section 641, wire fraud in violation of Title 18, United States Code, Section 1343, and interstate transportation of stolen property in violation of Title 18, United States Code, Section 2314. The jury entered a verdict finding Ary guilty of the charges made against him in Count 16 of the Superseding Indictment. The same jury entered a Special Verdict finding that $34,504 was involved in or traceable to property that was involved in the money laundering violation set out in Count 16 of the Superseding Indictment.

Count 17 of the Superseding Indictment charges that on or about a date unknown in 2000, and continuing through December 18, 2003, Ary unlawfully transported, transmitted, transferred and caused to be transported, transmitted and transferred in interstate commerce from Kansas to

Oklahoma, goods, wares and merchandise, that is, items owned by the Cosmosphere, of the value of $5,000 and more, knowing the same to have been stolen, converted and taken by fraud in violation of 18 U.S.C. § 2314.  The jury entered a verdict finding Ary guilty of the charges made against him in Count 17 of the Superseding Indictment.

Count 18 of the Superseding Indictment sought, as a result of the offenses alleged in Counts 1 through 6, 8 through 10, 12 through 15 and 17 of the Superseding Indictment that Ary forfeit to the United States pursuant to 18 U.S.C. § 981 (a) [1.] [C.] and 28 U.S.C. § 2461 all real and personal property that constitutes or derives from the proceeds traceable to the commission of the offense including but not limited to the sum of money equal to any and all proceeds representing the amount of proceeds obtained by Ary as a result of the offenses for which Ary is liable, all in violation of 18 U.S.C. § 981 and 28 U.S.C. § 2461.

Count 19 of the Superseding Indictment sought, as a result of the offenses alleged in Counts 7, 11 and 16 of the Superseding Indictment forfeiture to the United States pursuant to 18 U.S.C. § 982 [a.] [1.] all real and personal property involved in such offenses, including but not limited to a sum of money representing all properties real and personal involved in Counts 7, 11 and 16 for which Ary is liable, all in violation of Title 18 U.S.C. § 982. [D.Ex. 2.]

On December 6, 2006, the court entered a final order of forfeiture and imposition of forfeiture judgment in the criminal action, imposing a forfeiture money judgment in the amount of $76,486. In that final order, the court found that the jury determined that the amount of proceeds obtained by Ary from his fraud and theft convictions under Counts 1 and 2 was $396, and the United States recited that amount in its Motion for Final Order of Forfeiture.

**B. The Insurance Policy Proposal**.

Cincinnati Insurance Company (hereinafter "Cincinnati") issued a Directors and Officers

Liability Policy number BCP-8698278 to the Kansas Cosmosphere and Space Center and Kansas

Cosmosphere Foundation, for the Policy Period of December 7, 2004 to December 7, 2007.

(hereafter "Policy").

Section VII – Proposal of Part IV of the Policy reads, in pertinent part, as follows:

The "proposal" is the basis of this policy and is incorporated in and constitutes a part of this policy. A copy of the "proposal" is attached hereto. It is agreed by the "policy insureds" that the statements in the "proposal" are their representations, that they are material and that this policy is issued in reliance upon the truth of such representations;

Policy, Ex. 6.  The Non-Profit Organization Blue Chip Policy Declarations of the Policy, reads,

at page 3 as follows:

These Declarations together with the completed "proposal", all applicable Coverage Parts, the General Provisions and any accompanying endorsements shall constitute the contract between the "policy insureds" and the Cincinnati Insurance Company. [D.Ex. 6, Bates No. A00005.]
Paragraph J of Section XX – Definitions of Part IV of the Policy, reads as follows:
"Proposal" means:
1. The Application Form for this Policy and any applications for any policies for which this policy provides renewal coverage in whole or in part; and
2. Any materials submitted with the Application Form and such applications, which shall be maintained on file with us and shall be deemed to be attached hereto as if physically attached.

Policy, Ex. 6.  The Kansas Cosmosphere and Space Center submitted to Cincinnati a Proposal for

Cincinnati's "Blue Chip" Insurance Program, which was signed by Max Ary and dated

November 16, 2000. The November 16, 2000 Proposal at paragraph 2 states:

No person proposed for this insurance is cognizant of any act, error, or omission which he has reason to suppose might afford valid grounds for any future claim such as would fall within the scope of the proposed insurance, except as follows:

8

No acts, errors or omissions were identified in response to paragraph 2 in the November 16, 2000

Proposal.

> The November 16, 2000 Proposal at paragraph 4 states:
> No fact, circumstance or situation indicating the probability of a claim or action against which indemnification would be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for this insurance other than that which is disclosed in this Proposal. **It is agreed by all concerned that if there be knowledge of any such fact, circumstance, or situation, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.**
>
> The undersigned authorized agent of the person(s) and entity(ies) proposed for this insurance for the purpose of this Proposal represents that to the best of their knowledge the statements herein are true; and it is agreed that this Proposal shall be the basis of the contract and be deemed incorporated therein should the insurer evidence its acceptance of this Proposal by issuance of a policy. This Proposal will be attached to and will become part of such policy, if issued.

Policy, Ex. 6 (emphasis added).  Ary signed the November 16, 2000 Proposal, and by doing so,

he made the foregoing statements set forth in paragraph 4 of the November 16, 2000 Proposal.

**C. Plaintiff's Action for Coverage**

Plaintiff Max L. Ary seeks declaration of his rights under the Policy.  Ary made a claim

under the Policy for coverage of the Criminal Action under Part I, Directors, Officers, Trustees

and Organization Liability Coverage, which Cincinnati denied.

The Policy defines insureds to include directors, officers and trustees. At relevant times,

Mr. Ary was the president/CEO of the Cosmosphere.

Part I of the Policy provides "Directors, Officers, Trustees and organization Liability

Coverage" whereby Cincinnati agrees in relevant parts of "Section I - Insuring Agreement" to

"pay on behalf of the 'insureds' and 'loss' which they shall be legally obligated to pay resulting

from any claim first made during the policy period . . . for a 'wrongful act' committed, attempted

or allegedly committed or attempted . . . prior to the end of the 'policy period.' "

Section I, the "Insuring Agreement" also specifically states: "We will have the right and duty to defend the 'insureds' against any such claim."

Section IV A. of the Policy defines a "Claim" as "any proceeding initiated against any of the 'insureds' before any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief including any appeal from such proceeding."

The Policy defines "loss" in Section IV E. as "the total amount of monetary damages that the 'insureds' become legally obligated to pay on account of all 'claims for a 'wrongful act' with respect to which coverage hereunder applies, including damages, judgments, settlements and 'defense costs'." The Policy also specifies that "loss" shall not include:  ". . . [a]ny amount other than 'defense costs' which the 'insureds' are obligated to pay as a result of a 'claim' seeking relief or redress in any form other than monetary damages."

The Policy Period defined in the Policy is from December 7, 2004 to December 7, 2007.

On April 6, 2005, a proceeding was initiated before the United States District Court for the District of Kansas against Mr. Ary. A Superseding Indictment was filed thereafter.

The Superseding Indictment filed against Mr. Ary alleges in relevant parts that Mr. Ary made misleading statements, and alleges that he committed other acts and omissions which constitute breaches of duty while acting as an officer of the Cosmosphere.  The court records reflect that Mr. Ary pled not guilty to the charges against him.

Mr. Ary placed a demand on Cincinnati for coverage for a defense under the Policy and thereafter Cincinnati denied coverage and any defense under the Policy.

Mr. Thompson, plaintiff's counsel, claims that Mr. Ary entered an engagement agreement with Thompson Stout & Goering, LLC, a predecessor entity to the Thompson Law Firm, LLC on November 7, 2003.  Mr. Thompson also claims that plaintiff also retained, as counsel, Mr. William Price, of counsel to the firm of Phillips McFall McAffrey McVay & Murrah, P.C. of Oklahoma City, Oklahoma.

Mr. Thompson claims that, pursuant to the engagements with both counsel, Mr. Ary was obligated to pay legal fees and expenses contemporaneously.  Mr. Ary incurred and paid fees and expenses to attorneys and investigators in the amount of $112,098.75 in connection with defense of the criminal prosecution at issue after the date of the criminal indictment entered herein, April 6, 2005, through the current date.  The Thompson Law Firm, LLC, and Phillips McFall et al., claim that Mr. Ary is obligated to pay expenses and fees totaling $ 99,477.10, which amounts accrued after indictment and prior to conviction, but which have not been paid.

## III. ANALYSIS

Defendant raises several arguments in its motion for summary judgment.  Defendant argues that: 1) Exclusion C excludes coverage of an insured for committing deliberately fraudulent or dishonest acts; 2) Exclusion F excludes coverage of an insured where an insured gains a personal profit or advantage; 3) Mr. Ary's claim does not fall within the scope of coverage of the policy; 4) Mr. Ary's misrepresentations and omission in his policy proposal eliminate coverage; and 5) Kansas public policy prohibits insurance coverage and renders uninsurable the criminal action.  Defendant also asks the court to dismiss plaintiff's relief for an alleged claim for bad faith and attorney's fees.

Plaintiff responds that he seeks coverage only for the costs related to his legal defense and

that the verdict does not foreclose coverage under the policy.  Plaintiff incorporates by reference his previous arguments as to the interpretation of policy terms.  He further argues: 1) Exclusions C & F do not exclude coverage; 2) the claim falls within the policy; 3) no misrepresentation or omission was made in the policy proposal; 4) Kansas does not prohibit insurance coverage for intentional wrongdoing.  Fundamental to plaintiff's argument is the definition of "loss," "claim" and "wrongful act," which plaintiff claims provides a basis for coverage despite the exclusions.

**A. The Effect of the Verdict**

Several of the parties' motions were filed prior to the commencement of the criminal trial. Subsequent to a jury verdict of guilt, the court is faced with the additional issue of how the verdict affects defendant's interpretation of its policy.  Although a verdict may preclude coverage, the insurer would not have known the trial outcome when it denied coverage, which may also affect the quality of coverage plaintiff received.  In addressing this issue, the court turns to the several cases the parties cited.  The central concern is whether coverage was ambiguous, as plaintiff contends, or whether it is clear, as defendant contends.

In Federal Insurance Company v. Tyco Intern, Ltd, No. 600507/03, 2004 WL 583829 (N.Y. Supp. Mar. 5, 2004), the New York County Supreme Court addressed whether Dennis Kozlowski and other former Tyco officers and directors were entitled to insurance coverage for various lawsuits filed against them.  In particular, Mr. Kozlowski moved for a declaration of a duty to defend and pay defense costs.  Id. at *6.  The court noted that a duty to defend exists whenever an insured may be covered under a policy, which creates an obligation to pay defense expenses for all claims, both covered and uncovered.  Id. (citations omitted).  Doubts as to payment are to be construed in favor of the insured.  Id. (citations omitted).  The court noted that

12

"an insurer can only invoke a policy exclusion to avoid coverage if it can show that 'the allegations in the complaint cast that pleading solely and entirely within the policy exclusions.' " Id. citing Intl. Paper Co. v. Continental Cas. Co., 35 N.Y.2d 322, 32 (1974). Finally, the "duty to defend arises when the action is brought and is unaffected by the outcome of the action." Id. (citations omitted). See also National Union Fire Ins. Co. v. Brown, 787 F. Supp. 1424 (S.D. Fla. 1991) (noting that exclusion for losses arising out of claims made against insureds for fraud, dishonesty of criminal acts did not apply until final adjudication established that insureds engaged in fraud, dishonesty or criminal acts).

Similarly, in Associated Electric & Gas Insurance Services, Ltd. v. Rigas, 382 F. Supp.3d 685 (E.D. Pa. 2004), the insurer brought a declaratory judgment action to determine whether the insurer was required to advance defense costs.  The district court held that before adjudication of the merits of the insurers' claim of lack of coverage based on exclusions in the policies or rescission of the policies, the insurer had to pay $300,000 to each of the insureds for defense costs incurred. Id. The court noted that ambiguity should be resolved in the insured's favor and that if fraud exclusions were the only basis for denial, the insured would be obligated to advance coverage.  Id. at 698-99.  In addition, the court cited several public policy considerations that supported paying defense costs, such as the presumption of innocence.  Id. at 701.

Defendant raises several grounds by which to distinguish the above cases. Defendant responds that these cases involved policy language requiring a final adjudication whereas the Cincinnati Policy does not contain the words "final adjudication" in the personal profit and dishonesty exclusions.  Defendant further argues that the arguments and policy provisions of the three cases are clearly distinguishable from the case at hand.  Defendant also specifically cites

<u>Federal Ins. Co. v. Kozlowski, Tyco International, et al.</u>, ("Tyco II") 18 A.D. 3d 33, 792

N.Y.S.2d 397, 399, 2005 N.Y.App.Div. LEXIS 3029, *5 (Mar. 22, 2005), where the appellate

court held that the insurer is liable only for payment of those defense costs incurred in the

defense of covered claims.  The court found that "[t]o the extent such liabilities are excluded

from coverage by the personal profit exclusion, Federal is not required to pay for defense costs."

<u>Tyco II</u>, 792 N.Y.S.2d at 404.

 These cases lead the court to conclude that the focus of this analysis should be the policy

language and plaintiff's status before the return of the jury verdict.  <u>Spruill Motors, Inc. v.</u>

<u>Universal Underwriters Ins. Co.</u>, 212 Kan. 681, 685, 512 P.2d 403, 407 (1973) (noting that the

duty to defend is determined at the beginning of the litigation by the policy terms rather than

allegations in the complaint).  At the same time, the court is not limited from considering a jury

verdict in modifying an award of defense costs.  <u>See</u> <u>Rigas</u>, 382 F. Supp.2d at 700 ( noting that

"defense costs are subject to reimbursement if the relevant exclusions from coverage are

subsequently found to apply").

**B. Pretrial Coverage under the Insurance Policy**

 "Kansas follows the general rule that the law of the state where the insurance contract is

made controls."  <u>Safeco Ins. Co. of Am. v. Allen</u>, 262 Kan. 811, 941 P.2d 1365, 1372 (1997).  "If

a policy is unambiguous, the intention of the parties and the meaning of the contract are

determined from the instrument itself."  <u>Park University Enterprises, Inc. v. American Cas. Co.</u>

<u>Of Reading, PA</u>, No. 04-3197, 2006 WL 766750, at *3 (10th Cir. 2006) citing <u>Wolfgang v. Mid-</u>

<u>Am. Motorsports, Inc.</u>, 111 F.3d 1515, 1524 (10th Cir. 1997) (applying Kansas law).  In

determining the meaning of an insurance policy's language, the court analyzes what a reasonable

14

person in the position of the policyholder would understand the language to mean. Id. See Farm Bureau Mut. Ins. Co. v. Horinek, 233 Kan. 175, 660 P.2d 1374, 1378 (1983). An insurer's duty to defend arises "whenever there is a 'potential of liability' under the policy." Park University, 2006 WL 766760, at *3 (citations omitted). "The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint or petition and considering any facts brought to its attention or which it could reasonably discover." Id. citing (Spivey v. Safeco Ins. Co., 254 Kan. 2387, 865 P.2d 182, 188 (1993) (emphasis added)).

Whether defendant must cover the costs related to Mr. Ary's criminal action turns primarily on the language of the insurance policy. As an officer of the Cosmosphere, plaintiff was a party considered to be covered under defendant's policy and thus is an "insured." The action against Mr. Ary in federal court constituted a "claim" because it is a proceeding initiated before a government body legally authorized to render an enforceable judgment. The costs related to defending this action constitute a "loss" according to the policy terms. Finally, wrongful act is defined to include "any actual or alleged error, misstatement, misleading statement, act or omission" that was "attempted or allegedly committed" by an insured while acting in his official capacity. At the time of the Superseding Indictment, plaintiff emphasized the use of the word "alleged' in the definition of wrongful act as creating a basis for coverage.

Under this language, before the time of trial, Mr. Ary may have been entitled to coverage under the Cincinnati policy. He pled not guilty to the criminal action and at trial claimed that he had mistaken ownership of items sold at auction. His wrongful acts may have been considered an "alleged error." Thus, the possibility of coverage may have been ambiguous. Despite the language of Exclusions C & F, before trial it was not clear whether Mr. Ary had committed

15

deliberate fraud or gained personal profit and his pleading undercut this claim.  The fact that the exclusion did not contain the words "final adjudication" does not radically alter the results here. If anything, the lack of the phrase "final adjudication" makes it more ambiguous when the insurer may conclude that an exclusion applies.  Prior to the entry of the verdict, it was still unclear whether Mr. Ary fell within Exclusions C & F.  Assuming otherwise would have created the presumption that Mr. Ary was guilty before he stood trial.  <u>Rigas</u>, 382 F. Supp.3d at 701.  Under these circumstances, the court notes that plaintiff may have been entitled to coverage before the entry of the jury verdict.  However, since the state of affairs is post-conviction, the court's pre-conviction analysis is of less import.

## C. Policy Coverage Post-Trial

Now, the state of affairs in this case is post-trial. Thus, the court's findings rest on the effect of the jury's verdict and findings as to forfeiture on Mr. Ary's claim to coverage.  Case law states that the duty to defend is measured from the beginning of the action. <u>Tyco</u>, 2004 WL 583829, at *6; <u>Spruill</u>, 212 Kan. at 685, 512 P.2d at 407. Yet, courts have acknowledged that subsequent factors may be taken into consideration.  <u>Rigas</u>, 382 F. Supp.2d at 700; <u>Tyco II</u>, 792 N.Y.S.2d at 404.  Neither party has cited case law from this state or circuit that could assist the court in reaching a conclusion as how to approach a policy in these circumstances.  Both approaches clearly have limitations. The former creates coverage where the insured may later be found guilty.  The latter approach is problematic because it potentially eviscerates any coverage initially provided, and it encourages secondary litigation following a verdict, rather than merely ending any continuing coverage.

Although plaintiff's analysis of the terms would appear to be a complete interpretation of the policy, it ignores some other terms of the policy.  In particular, the two exclusions limit what a party in Mr. Ary's position may recover after the entry of a verdict and forfeiture.  First, Exclusion C states that Cincinnati is not "liable to pay, indemnify or defend any 'claim'" related to "any deliberately fraudulent, dishonest, criminal or malicious act or omission or willful or reckless violation of any statute, rule, regulation, agreement, or judicial or regulatory order."  The charges alleged against Mr. Ary were various counts of mail fraud, wire fraud, theft of government property, transportation of stolen goods, money laundering, and criminal forfeiture, in relation to online auction sales of property belonging to the Cosmosphere or the government.  The very language of these statutes emphasizes fraud and dishonesty as elements of commissioning the crime.  A violation of 18 U.S.C. §§ 1341, 1343 requires a "scheme and artifice to defraud and for obtaining money by false and fraudulent pretenses and representations."  A violation of 18 U.S.C. § 641 requires embezzlement, stealing and purloining and the knowing conversion of property not one's own.  A violation of 18 U.S.C. § 2314 requires unlawfully transporting, transmitting, transferring or causing such actions across state lines the property of another.  Finally, a violation of 18 U.S.C. § 1957 requires engaging in a monetary transaction through a financial institution in which a person criminally derived property of value.  Combined with the factual allegations emphasizing that Mr. Ary sold property not belonging to him, the court finds that Exclusion C is satisfied following the jury verdict.

In regard to the insurance proceeds received from Oriental Assurance Corporation, Mr. Ary's misrepresentations led to a claim being filed to which the Cosmosphere was not entitled. He alleged that the lost item was an actual Omega watch rather than a mock-up. At the same

17

time, Mr. Ary represented to NASA that the mock-up watch was in the Cosmosphere's collection, even though it had been lost and insurance proceeds had been collected.  This also requires an element of dishonesty or deliberate fraud.  The forfeiture counts requested the value of a flown Omega watch though the jury returned an award of $336 for Counts 1 and 2.  The court finds that these facts are sufficient for defendant to conclude that Exclusion C applies following the jury verdict.

Exclusion F also provides a basis for defendant to deny coverage.  The exclusion provides that defendant is not liable to pay, indemnify or defend any "claim" of an insured related to "any personal profit or advantage" to which he is "not legally entitled."  Applied here, the profits from sales of Cosmosphere property fall within this exclusion.  Based on the forfeiture claims, plaintiff was not entitled to property obtained in various sales. The Superseding Indictment alleged that Mr. Ary deposited several checks to personal accounts for auction sales of property owned by other entities, of which the jury found Mr. Ary guilty.

Although arguably Counts 1 and 2 relating to insurance proceeds do not fall within Exclusion F, the court notes that it is not necessary that every count fall within Exclusion F. As previously noted, Exclusion C includes claims of mail and wire fraud as deliberately fraudulent as outlined by the factual allegations and confirmed by the jury's verdict and forfeiture award.

Having found that the exclusion provisions apply, the court does not reach the parties' remaining arguments.

**D. Claim of Bad Faith Denial of Coverage**

Additionally, the court finds the remaining claim of damages and bad faith denial of

18

coverage should be dismissed.  The court does not find that defendant acted in bad faith but made a reasonable assessment of the claim terms and scope of coverage.  See Snodgrass v. State Farm Mut. Auto Ins. Co., 15 Kan.App.2d 153, 167-68, 804 P.2d 1012, 1023.  Defendant's interpretation provided grounds for denying coverage.  Although this is of no consolation to plaintiff, any money attained pretrial would have been reimbursed after the finding of guilt on the relevant counts based on the court's interpretation of the policy exclusion provisions.

**E. Defendant's Counterclaims**

In its answer, defendant raises three counterclaims: 1) reformation; 2) declaratory judgment based on Exclusion D; and 3) declaratory judgment based on non-disclosure. Defendant has already voluntarily dismissed the Cosmosphere from the third-party complaint. Because of the court's finding as to coverage in the declaratory judgment and the claim of bad faith denial, the court dismisses defendant's counterclaims.

IT IS ACCORDINGLY ORDERED this 17th day of May 2006, that the court grants defendant's Motion for Summary Judgment (Dkt. No. 44).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

19